IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DEON ARNELL TURNER,<br><br>     Plaintiff,<br><br>v.<br><br>TERRY KOKOLIS, *et al.*,<br><br>     Defendants. | Civil Action No.:  JRR-23-0555 |

**MEMORANDUM**

On May 1, 2023, Plaintiff Deon Arnell Turner filed motions for the appointment of counsel and for certification of his Complaint as a class action.  ECF Nos. 11, 12.  Turner made similar motions on March 28, 2023, which were denied by this Court on April 4, 2023.  ECF Nos. 7, 8.  The Court will again deny these Motions for the reasons outlined below.  Turner has also moved to proceed in forma pauperis.  ECF No. 2.  Based on his indigency, this Motion will be granted.

On May 11, 2023, Turner filed an Amended Complaint as directed by this Court.  ECF No. 13.  The Court must screen the Amended Complaint for sufficiency pursuant to 28 U.S.C. § 1915A(b).  In deciding whether a complaint is frivolous, or fails to state a claim upon which relief may be granted, "[t]he district court need not look beyond the complaint's allegations . . . . It must, however, hold the pro se complaint to less stringent standards than pleadings drafted by attorneys and must read the complaint liberally." *See White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989).

I.   Motion to Appoint Counsel

A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1),[1] is a discretionary one, and may be considered where an indigent claimant presents exceptional

---

[1] Under § 1915(e)(1), a Court of the United States may request an attorney to represent any person unable to afford counsel.

circumstances. *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also, Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982). There is no absolute right to appointment of counsel; an indigent claimant must present "exceptional circumstances." *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel).

Turner presents no exceptional circumstances requiring the appointment of a lawyer. He simply states that he has limited access to the law library, limited knowledge of the law, and a lawyer would be better equipped to present this case. ECF No. 12. These proffered circumstances are not exceptional, and the issues before the Court are not unduly complicated. Further, upon careful consideration of the motions and previous filings by Turner, the Court finds that he has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. Accordingly, there is nothing that would warrant the appointment of an attorney to represent Turner at this time. The motion is denied without prejudice.

II.  Certification as a Class Action

Turner also asks that his Complaint be certified as a class action. ECF No. 12. Federal Rule of Civil Procedure 23(a) delineates the prerequisites for a class action and provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

In his Motion, Turner simply restates the criteria outlined above. ECF No. 11. He provides no additional facts or details to support that the prerequisites required by Federal Rule of Civil Procedure 23(a) have been satisfied. Simply reiterating the rule is insufficient. In the absence of any additional detail, this Court cannot determine if there is a viable class of persons for whom, if they were permitted to prosecute separate actions on their own behalf, would risk "inconsistent or varying adjudications" that would create "incompatible standards of conduct for the party opposing the class." *See* Fed. R. of Civ. P. 23(b).

Further, the Fourth Circuit has consistently held that "this circuit does not certify a class where a pro se litigant will act as representative of that class." *Fowler v. Lee*, 18 F. App'x 164, 2001 WL 1033312 (4th Cir. 2001) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)). Thus, unless Plaintiff retains counsel, this case cannot under any circumstances proceed as a class action. The Court will not certify Turner's Complaint as a class action. The Clerk shall be directed to remove proposed Plaintiffs "John Doe Detainees/Inmates" and "Jane Doe Detainees/Inmates" from the docket.

III. Screening of Turner's Amended Complaint Pursuant to 28 U.S.C. § 1915A

A. Turner's Allegations

In his Amended Complaint, Turner names seven Defendants: Terry Kokolis, Director of the Talbot County Detention Center ("TCDC"); "Jane Doe … Correctional Officer(s)"; "John Doe … Correctional Officer(s)"; "Food Service Provider (Trinity) Chief Executive Officer"; Commissary Service Provider (Keefe) Chief Executive Officer"; Healthcare Service Provider (WellPath) Chief Executive Officer"; and "Telephone Service Provider (Securus) Chief Executive Officer." ECF No. 13 at 3.

3

Turner makes a series of seemingly unrelated claims. First, he states that an officer "sent back papers belonging to Plaintiff for feeling like books," which he alleges violates the law regarding the handling of inmate mail. *Id.* at 4. Next, he alleges that Defendant Kokolis has not provided "an adequate law library or adequate assistance from persons trained in the law which in fact frustrated and impeded plaintiff(s) valid non-frivolous claim(s)." *Id.* He does not elaborate what claims were impeded, or how Defendant Kokolis's actions impeded his claims. Next, he states that Kokolis "failed to make known the proper procedure to have any telephone number designated as private for lawful and legal communication." *Id.*

Turner makes a series of allegations regarding the living conditions at TCDC, including thick windows, which obstruct his view outside, toilets that leak, and black mold in the ventilation system. *Id.* at 5. He also alleges he has been served "inadequate portions" of food without "fresh fruit or dairy." *Id.* He states that his requests for a "religious diet" have been denied, though he does not clarify what religious diet he has been denied. *Id.* With respect to food, he states that "special order meals" are only available for an "excessive amount" above market rate. *Id.* at 6. He provides at least 13 dates on which he asserts the food he was provided was generally "unsatisfactory," but does not explain why or how. *Id.* at 7.

He takes issue with items available in the "kiosk," including that items are not properly labeled "concerning bioengineered foods," the kiosk does not display a return policy, items are excessively priced, items are not translated into other languages, and the kiosk is not accessible to inmates with disabilities without assistance. *Id.* at 5. Turner does not allege that he is disabled; and he does not explain how the kiosk is inaccessible. *Id.*

He alleges that he has been subjected to certain policies and procedures at TCDC that are "incorrect to COMAR [Code of Maryland Regulations]," but he does not specify which policies or how they are incompatible with Maryland law. *Id.* at 5.

With respect to medical care, Turner alleges that medical provider WellPath "does not provide alternative treatments to any healthcare issues, upon request with proven medical literature." *Id.* He also states that "it has taken time to address serious healthcare issues of pain." *Id.* He does not specify how long it took to receive care, what the healthcare issues causing pain were, or who delayed or denied him care. He alleges that he made multiple requests for extra blankets "to elevate lower legs to drain excessive fluid" but his requests were denied. *Id.* at 7.

He states that the fees charged for phone calls are "excessive" and there is not a way to get phone cards refunded. *Id*. at 5. He states that TCDC personnel "do not visibly display name or badge numbers on uniforms." *Id.* at 7.

Turner alleges that on December 31, 2022, "Corporal Minner used excessive force against Plaintiff in the corner of Fox housing unit." *Id.* at 7. Turner provides no additional details.

On or about January 4, 2023, Turner was found guilty of a disciplinary infraction and he "did not receive disposition to seek an appeal." *Id.* On October 13, 2022, he states that he had a disciplinary hearing, but there was no "recorder to make an official record." *Id.* Turner also makes a series of unrelated allegations about incidents that he observed happen to other inmates, but fails to state how, if at all, these affect the rights on which he pursues his action.[2] *Id.* at 6-7.

---

[2] To state a civil rights claim, a prisoner must allege that he, himself, sustained a deprivation of right, privilege, or immunity secured by Constitution or federal law. *See Inmates v. Owens*, 561 F.2d 560, 563 (4th Cir. 1977). To demonstrate standing, "Plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *See Allen v. Wright*, 468 U.S. 737, 751 (1984) (abrogated on other grounds by *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377 (2014)). Turner raises allegation of incidents he observed with other inmates at TCDC, however, he simply has no standing to assert the rights of other inmates who may have suffered harm as the result of a constitutional violation. Any claims not directly related to Turner are dismissed.

Based on these facts, Turner alleges the following violations of his rights: "deliberate indifference … to medical needs, … chilling effect on speech and association, access to court, … cruel and unusual punishment, denial of due process and freedom of speech and association …" *Id.* at 8. As relief, he seeks a "declaration" that his rights have been violated, a "preliminary and permanent injunction" to "establish terms or practices favorable to Plaintiff(s)" and to require "strict adherence to policy and procedure to administer COMAR as written," and almost two million dollars in damages. *Id.* at 9.

B. Analysis

Section 1983 requires a showing of personal fault based upon a defendant's personal conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). In other words, there is no respondeat superior liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). A private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of respondeat

6

superior. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Maryland Dep't of Public Safety and Correctional Services,* 316 Fed. Appx. 279, 282 (4th Cir. 2009).

Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Turner has named Terry Kokolis, Director of TCDC; "Food Service Provider (Trinity) Chief Executive Officer"; Commissary Service Provider (Keefe) Chief Executive Officer"; Healthcare Service Provider (WellPath) Chief Executive Officer"; and "Telephone Service Provider (Securus) Chief Executive Officer" (ECF No. 13 at 3) as Defendants, but other than listing them in the caption of the complaint, Turner has not provided any facts personally linking any of the named Defendants to the events complained of, or provided facts substantiating supervisory liability. Given Turner's failure to sufficiently plead personal participation or supervisory liability as to these Defendants, Turner's complaint against them must be dismissed.

Turner has alleged violations of his rights, such as violations of his right to free speech and association, but these conclusory labels do not reflect the facts proffered in his Complaint (or vice versa), and do not offer a basis on which to assert a claim. Further, many of the allegations Turner raises in his Complaint, even liberally construed as a whole, do not state a federal cause of action.

Based on the factual background set forth in the Amended Complaint and fully outlined above, the court finds that, construing the complaint liberally, Turner has, at best, attempted to state the following federal claims: 1) denial of access to the courts; 2) claims regarding inadequate living conditions, denial of constitutionally adequate medical care, and use of excessive force; 3) denial of due process; and 4) violation of his religious rights. His complaint is therefore analyzed accordingly. However, for the reasons that follow, these claims are inadequately plead and thus must be dismissed.

        i. Access to Courts

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). However,

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996).[3]

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355). "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine

---

[3] The Fourth Circuit has cited *Lewis* when deciding claims of denial of access to courts brough by pretrial detainees. *See Tate v. Parks*, 791 F. App'x 387, 392 (4th Cir. 2019) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996); ("To state a claim that he was denied his right of access to the courts because he could not access the jail's law library, Tate had to allege he was actually injured in some way by the denial of access.")

of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349. Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id*. at 399.

Turner's bald allegations that Defendant Kokolis has not provided "an adequate law library or adequate assistance from persons trained in the law" are insufficient. ECF No. 13 at 4. Although Turner states that this "in fact frustrated and impeded plaintiff(s) valid non-frivolous claim(s)" (*id.*), he does not elaborate regarding what claims were impeded, or how Defendant Kokolis's actions impeded his claims. In the absence of this information, Turner's claim that he was denied access to the courts cannot proceed.

ii. Fourteenth Amendment Claims

At the time of the incident giving rise to this case, Turner was a pretrial detainee in TCDC. Accordingly, his claims are analyzed under the Fourteenth Amendment. *See Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001); *Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992). "The constitutional protections afforded a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment." *Barnes v. Wilson*, 110 F.Supp.3d 624, 629 (D. Md. 2015) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. CONST, AMEND. VIII; *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016).

1. Medical

Deliberate indifference to the serious medical needs of a pretrial detainee violates the Due Process Clause. *Young*, 238 F.3d at 575 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998) (concluding that, because it is sufficient for liability under the 8th Amendment, "deliberately indifferent conduct must also be enough to satisfy the fault requirement for due process claims based on the medical needs of someone jailed while awaiting trial"); *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir.1999) (applying deliberate indifference standard to pretrial detainee's claim that he was denied needed medical treatment), cert. denied, 529 U.S. 1067 (2000); *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir.1990) ("The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee.")). The Fourth Circuit has held that, although the precise scope of a pretrial detainee's Fourteenth Amendment rights is "unclear," a violation can be made out when a pretrial detainee "shows [that a state actor demonstrated] deliberate indifference to serious medical needs" under cases interpreting the Eighth Amendment. *Mays v. Sprinkle,* 992 F.3d 295, 300 (4th Cir. 2021).

In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106; *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Iko v. Shreve*, 535 F. 3d 225, 241 (4th Cir. 2008). The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Lightsey*, 775 F.3d at 178. Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need; and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure the necessary

care was available.  *See Farmer*, 511 U.S. at 837; *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

"True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting Farmer, 511 U.S. at 844).  Moreover, an inmate's mere disagreement with medical providers as to the proper course of treatment does not support a claim under the deliberate indifference standard.  *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977).

Turner's allegation that medical provider WellPath "does not provide alternative treatments to any healthcare issues, upon request with proven medical literature" does not satisfy the exacting standard of deliberate indifference. ECF No. 13 at 5.  At best, this states a disagreement with a medical provider as to the proper course of treatment, which, as noted above, does not support a claim of deliberate indifference.  Turner alleges that "it has taken time to address serious healthcare issues of pain." *Id.* at 5.  Similarly, he claims that he made multiple requests for extra blankets "to elevate lower legs to drain excessive fluid" but his requests were denied.  *Id.* at 7.  These claims are insufficient because he fails to state what medical issues were causing pain and fluid retention, how long he was denied care, who denied him care, or what injuries he suffered as a result.  Thus, Turner's medical care claims are dismissed.

2. Conditions of Confinement

In evaluating the constitutionality of conditions of pretrial detention, the court must evaluate whether the conditions amount to punishment of the detainee. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). This is because "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id.* A court must determine whether the challenged condition "is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538. "Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment." *Id.* Further, "[r]estraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Id.* at 540. To state a claim for unconstitutional conditions of pretrial confinement, therefore, a plaintiff must allege that the conditions are for "punitive purposes or clearly in excess of the legitimate governmental interest of maintaining security and order." *Epps v. Levine*, 480 F. Supp. 50, 52 (D. Md. 1979).

As a threshold matter, Turner does not allege injury traceable to the conditions of his confinement, nor does he name any individual he alleges is personally responsible for these conditions. Turner also fails to assert any facts from which the Court could construe that the conditions described are punitive or unrelated to a legitimate governmental interest. These claims shall be dismissed.

3. Excessive Force

The Supreme Court held in *Kingsley v. Hendrickson* that "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." __ U.S. __, 135 S. Ct. 2466, 2473 (2015). Regardless of an officer's state of mind, a claim is stated where facts alleged provide a reasonable foundation on which to conclude that the "force purposely or knowingly used against him was objectively unreasonable." *Id.* at 2472 (cited in *Dilworth v. Adams,* 841 F.3d 246, 255 (4th Cir. 2016)). Pursuant to *Kingsley,* this court must consider whether under the "facts and circumstances" of this particular case, and from the "perspective of a reasonable officer on the scene," the force used against Plaintiff was objectively excessive. *Kingsley* at 2473.

Turner's bald, unsupported allegation that "Corporal Minner used excessive force against Plaintiff in the corner of Fox housing unit" (ECF No. 13 at 7) is insufficient to state a claim for excessive force. Turner puts forth no additional facts regarding this alleged incident, and thus this claim must be dismissed.

iii. Due Process

At the outset, the court notes that a violation of prison policy alone does not state a Fourteenth Amendment due process violation. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 & n.6 (D. Md. 2015) (citing *Myers*). Many of Turner's allegations state that a particular policy of the prison was not followed, but this is insufficient to state a federal claim.

In the pretrial context, a due process inquiry requires examination of two distinct questions: whether the action implicates a liberty interest, thus triggering procedural due process requirements; and, if so, whether the procedures afforded the detainee satisfied due process requirements. *Dilworth v. Adams*, 841 F.3d 246, 250-51 (4th Cir. 2016). "By definition, pretrial

13

detainees have not been convicted of the crimes with which they are charged. For that reason, the Supreme Court held in *Bell v. Wolfish*, they retain a liberty interest in freedom from 'punishment,' even while they are detained to ensure their presence at trial." *Dilworth v. Adams*, 841 F.3d 246, 251 (4th Cir. 2016) (citing *Bell*, 441 U.S. at 535–37).

Here, Turner provides insufficient information to analyze his claim. Turner alleges that on or about January 4, 2023, he was found guilty of a disciplinary infraction and he "did not receive disposition to seek an appeal." ECF No. 13 at 7. Turner provides no information about the substance of the disciplinary hearing, the result of the hearing, or whether he received any sanction which might implicate a liberty interest, thus triggering due process requirements. Further, he does not name a defendant he believes is personally responsible for this alleged violation of his rights. In the absence of sufficient information to state a claim, this allegation cannot proceed. For similar reasons, his claim that on October 13, 2022, he had a disciplinary hearing without a "recorder to make an official record" must also be dismissed. *Id.* Turner has not named proper defendants or put forth sufficient facts to state a claim, and thus these claims are dismissed.

### iv.  Religious Rights

In relevant part, the Religious Land Use and Institutionalized Persons Act ("RLUIPA") states:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ..., even if the burden results from a rule of general applicability, unless the government demonstrates that the imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. §2000cc-1(a).

14

RLUIPA restored religious free exercise rights to prisoners similar to those enjoyed by those who are not incarcerated. *See Cutter v. Wilkinson*, 544 U.S. 709, 715-17 (2005). The Act "prescribes a shifting burden of proof for inmate religious exercise claims." *Incumaa v. Stirling*, 791 F.3d 517, 525 (4th Cir. 2015). A prisoner must initially "demonstrate that the prison's policy exacts a substantial burden on religious exercise," then the burden "shifts to the government to prove its policy furthers a compelling governmental interest by the least restrictive means." *Id*. A prison regulation imposes a substantial burden when it forces a person to "choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand." *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (brackets in original).

Turner alleges, without any factual support, that his requests for a "religious diet" have been denied. ECF 13 at 5. No additional details are provided. *Id.* Turner does not identify what religion he practices, what religious dietary restrictions he observes, to whom and when he made requests for his required diet, or whether he suffered any injuries as a result of the alleged denial. He also does not name any defendant who personally participated in this alleged violation of his rights. He has failed to meet his burden of demonstrating "that the prison's policy exacts a substantial burden on religious exercise," and thus this claim is dismissed. *Incumaa*, 791 F.3d at 525.

IV. Conclusion

Turner's Motion to Proceed in Forma Pauperis (ECF No. 2) is granted. Turner's motions for the appointment of counsel and for certification of his Complaint as a class action (ECF Nos. 11, 12) are denied. Turner's Complaint is dismissed as to all claims and Defendants, and the Clerk will be directed to close this case.

 _6.14.23_____                           _____/S/_____
Date                                                Julie R. Rubin
                                                    United States District Judge